# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL VALENZUELA,<br><br>    Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>    Defendant. | 1:04cv5609 DLB<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

## **BACKGROUND**

Plaintiff Manuel Valenzuela ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On October 13, 2004, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed an application for supplemental security income December 13, 1999. AR 125-127, 138-147. He alleged that he had been disabled since January 1, 1990[3], due to carpel tunnel syndrome ("CTS") and a bad right elbow. AR 139. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 110-113, 116-119, 120. On March 26, 2001, ALJ James Berry held a hearing. AR 67-82. ALJ Berry held a supplemental hearing on October 29, 2001. AR 83-99. On December 26, 2001, the ALJ found that Plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform a significant number of jobs in the national economy. AR 52. The Appeals Council denied review on June 4, 2003. AR 7-11.

Hearing Testimony

On March 26, 2001, ALJ Berry held a hearing in Fresno, California. AR 67. At the start of the hearing, the ALJ confirmed that Plaintiff knew of his right to representation but wished to proceed without representation. AR 69.

Plaintiff informed the ALJ that he was having surgery on April 19, and the ALJ agreed to hold the record open until May 15 so that Plaintiff could provide the ALJ with the new medical records. AR 70-71.

Plaintiff testified that he was 50 years old at the time of the hearing and was a single parent of a three year old boy. AR 73. He completed his GED and has an Associate of Arts degree and an unrenewed cosmetology license. AR 73.

He last worked in 1987, when he bought a louver machine but was unable to run it. AR 74. He also worked in 1986 or 1987 as a hairdresser. AR 74.

Plaintiff testified that he could not work because he was in constant pain. AR 75. It takes him an hour to change his son's clothes and an hour to feed him. AR 75. He can't bathe or

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] The Social Security Administration recommended an onset date of November 29, 1999. AR 128.

shave everyday. AR 75. He testified that he has constant pain in his hands that is not relieved with medication. AR 75.

He has to buy groceries and carry them into the house, but sometimes his friends help. AR 75. Sometimes he has to stop and rest while shopping because he doesn't have enough energy to finish or his hands are so sore he can't put anything else into the cart. AR 75.

To decrease his pain, he sits on the couch with his hands up. AR 76. He testified that the medication helps but makes him sleepy. AR 76. He has a hard time working on his car and can't cut his or his son's hair. AR 77. He has trouble cutting meat and vegetables and preparing them. AR 77.

He also testified that his hepatitis C contributes to his inability to work. AR 78. He was diagnosed in 1999 or 2000 and takes pills everyday and gets shots three times per week. AR 78. He didn't know of any symptoms that were related to the hepatitis C. AR 78.

Plaintiff testified that he is very tired and has help washing his clothes and cleaning his floors. AR 79. He explained that in six months, he'll know if the Interferon is working for his hepatitis C. AR 79. The ALJ told Plaintiff that he didn't see anything in the record about treatment for hepatitis C and that Plaintiff would need to get those records. AR 80.

On a normal day, he gets up around 3 or 4 in the morning and tries to clean himself. AR 79. His son gets up at 5, and he diapers and feeds him. AR 79. Dressing his son is difficult and sometimes he can't if he doesn't have help. AR 79. If he has to go to the store, he will, but his friends go to the store and get his medication if he can't. AR 79.

On October 29, 2001, ALJ Berry held a supplemental hearing. Plaintiff appeared along with Vocational Expert ("VE") Judith Najarian. AR 83. At the beginning of the hearing, the ALJ again confirmed that Plaintiff was aware of his right to representation but chose to proceed without representation. AR 85.

Plaintiff explained that he was a drug addict in 1979, but that he has not taken drugs since 1993. AR 86-87. In 1993, he was sent to prison. AR 88. His son was born in 1998, and after he found out the child was being abused, he took custody of him. AR 87.

He testified that his right arm has gotten worse since his recent surgery. AR 86. He is still in therapy and trying very hard, but is on more medication than before and isn't sleeping. AR 87. He explained that he would work if he could. AR 88.

Plaintiff testified that he had no problems standing, and could stand for six to eight hours without a problem. AR 89. He could walk for maybe a block in an eight hour period. AR 90. He is limited in walking because his hepatitis C makes him exhausted. AR 90. He can lift two pounds on a consistent basis, and cannot carry anything consistently. AR 91. He could sit for 45 minutes before needing to get up for 10 or 20 minutes. AR 91. After he got up, he could sit for another 45 minutes. AR 91. He could do this for a total of four to five hours per day. AR 91.

Plaintiff testified that he has problems using his hands for most activities. AR 91. The right side has gotten worse since his operation and his left side is not healing. AR 92. Plaintiff also referenced a problem with bowel movements, and needing to return to the restroom numerous times after a movement. AR 91.

VE Judith Najarian testified that she did not have the dates of Plaintiff's work as a cosmetologist and therefore could not determine if it fell within the past 15 years so as to constitute past relevant work. AR 92. When asked, Plaintiff stated that it was in either 1986 or 1987, but that he couldn't remember because he was "very heavily on drugs" at that time. AR 93. The ALJ told the VE to assume that it was 1987. AR 93.

The VE classified this as light, skilled work. AR 94. She determined that Plaintiff had the transferrable skills of knowledge of colors and solutions and how they're used and money handling. AR 94. Such skills transfer to beauty equipment sales. AR 94.

The ALJ asked the VE to assume a hypothetical individual who was 51 years old and had Plaintiff's education and work history, with a combination of severe impairments, who could lift and carry 100 pounds occasionally and 50 pounds frequently, could stand, walk and sit six to eight hours, but must avoid repetitive use of the hands for grasping and forceful gripping. AR 94-95. Such an individual could not perform Plaintiff's past relevant work, but could perform work in beauty supply sales. AR 95. This person could also perform light delivery. AR 95.

An individual with the same vocational parameters, who could stand for eight hours, walk one block, lift two pounds maximum and carry no weight, sit for four to five hours total, with difficulties using the upper extremities bi-laterally for activities involving gripping, grasping, twisting, turning and fine manipulation, could not perform Plaintiff's past relevant work. AR 96. Such an individual could not perform any other job in the national economy. AR 96.

Plaintiff asked the VE how he could perform the job of delivery person if he could not write orders. AR 97. He explained that after writing his name three times, his hand no longer works and just goes numb. AR 97. The VE responded that such a person could not do the job of delivery person. AR 97.

<u>Medical Record</u>

In July 1979, Plaintiff was involved in a motor vehicle accident and sustained a head concussion, rib fractures, a compound fracture of the right elbow with a dislocated radial head, and perineal laceration. AR 317, 336. He underwent multiple operations, including repair of his elbow. AR 317-318, 336-337, 339.

In June 1999, Plaintiff was seen as the Sierra Adult Health Center and complained of symptoms of left CTS and was given a left arm splint. An EMG was positive and he was diagnosed with CTS. AR 151.

On August 4, 1999, Plaintiff indicated that he had pain in his hand. On August 18, 1999, Plaintiff threatened that if he did not receive pain medication, he would "raise hell." AR 152.

On September 8, 1999, Plaintiff indicated that a splint was helping his left CTS but that he was still having much pain. AR 150.

On February 9, 2000, Plaintiff saw Stephen Zuniga, M.D. for evaluation of his bilateral CTS. AR 160. Plaintiff complained of pain, numbness and tingling in both hands. AR 160. Upon examination, there was no swelling, discoloration or atrophy of the upper extremities. AR 160. Tinel's and Phalen's signs were negative. AR 160. There was altered light touch sensation and full range of motion of the wrists and digits. AR 160. Dr. Zuniga diagnosed Plaintiff with bilateral CTS, affecting the left more than the right based on clinical history. AR 161. He recommended left carpal tunnel release. AR 161.

On March 7, 2000, a State Agency physician completed a Physical Residual Functional Capacity Assessment form.  AR 166.  The physician opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand/walk about six hours in an eight hour work-day, sit about six hours in an eight hour work-day, and was limited in pushing/pulling with his upper extremities.  AR 167.  He was precluded from frequent use of his left hand in reaching, handling, fingering, and feeling.  AR 169.  These findings were affirmed on May 1, 2000.  AR 173.

In August 2000, Plaintiff was diagnosed with positive hepatitis C antibody.  AR 183-184.  He had no history of weight loss or anemia and no complaints of unusual tiredness.  AR 184.

On October 17, 2000, Plaintiff underwent a liver biopsy that revealed symptoms compatible with cirrhosis.  AR 187.  However, the pathology report found no evidence of cirrhosis.  AR 207.

On December 20, 2000, Plaintiff complained of feeling tired intermittently.  AR 182.  Plaintiff was motivated and wanted to proceed with his hepatitis C treatment.  AR 182.

On February 14, 2001, Plaintiff saw Dr. Dhillon and complained of decreased appetite, weight loss, fatigue and headaches.  AR 180.

On March 5, 2001, Plaintiff was evaluated by Terry A. Gillian, M.D.  AR 250.  Plaintiff complained of bilateral CTS with numbness and tingling in both hands, pain, and nocturnal paresthesias.  AR 250.  He stated that he was unable to do any home activities or other activities because of the increase in pain, numbness and tingling.  AR 250.  Dr. Gillian diagnosed Plaintiff with bilateral CTS, bilateral chronic palmar tenosynovitis, compression of the right ulnar nerve at the elbow, and chronic stenosing tenosynovitis of the right long and little fingers.  AR 250.  Dr. Gillian recommended surgery.  AR 251.

On April 19, 2001, Plaintiff underwent a right carpel tunnel release and tenosynovectomy.  AR 255.

On April 23, 2001, Dr. Gillian indicated that Plaintiff's right hand was healing with mild swelling but no infection.  He indicated that Plaintiff would be disabled for about eight weeks.  AR 252.

On May 9, 2001, Plaintiff still complained of increased pain and symptoms in his left upper extremity. AR 253. He reported that his right upper extremity was improving but his previous injury to his right elbow and forearm is limiting his mobility, strength and function. AR 253. He was instructed to avoid repetitive and strenuous activities with both hands and not to lift over five pounds. AR 253.

Plaintiff underwent occupational therapy from May 2001 to June 2001 for treatment of right CTS and right palmar tenosynovitis. AR 229, 240. On June 4, 2001, it was noted that the pain in Plaintiff's right upper extremity was no longer carpal tunnel pain but was pain from his old elbow injury. AR 264. He was released from therapy on June 27, 2001, and indicated that pain level on the right was 4/10 and 9/10 on the left. AR 240. He indicated that he was independent in helping his son dress, tie his shoes, and fix his hair. AR 240. He could cook a light dinner and use a knife for short periods. He could carry a grocery sack weighing up to seven pounds. AR 240. He was still not able to maintain a sustained grasp on objects. AR 240. He was instructed to continue with his home exercise program. AR 240.

On August 13, 2001, Dr. Dhillon noted that Plaintiff received his last shot on August 10, 2001 and was doing fine. AR 176. His treatment was stopped. AR 176.

On October 12, 2001, Plaintiff's treating physician Dr. Cardova noted on a Medical Report for Social Services that Plaintiff was incapacitated from work until November 12, 2002. AR 269. Plaintiff could not perform manual labor, sedentary labor, participate in classroom training, or attend adult school. AR 268.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of CTS, hepatitis C and tenosynovitis. AR 45. Plaintiff was not as dysfunctional as alleged. AR 48. The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to occasionally lift and carry 100 pounds, 50 pounds frequently, sit, stand and/or walk for six to eight hours, but must avoid repetitive use of the hands for grasping and forceful gripping. AR 49. Based on the testimony of the VE, the ALJ determined that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. AR 51.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4]  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (history of CTS, history of hepatitis C and tenosynovitis) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot return to his past work; (5) but is able to perform a significant number of jobs in the national economy and is therefore not disabled.  AR 51-52.

Plaintiff argues that (1) the ALJ improperly rejected the opinion of treating surgeon Dr. Gillian; (2) the ALJ failed to properly assist Plaintiff, who was unrepresented; (3) the ALJ erred at step II; (4) the VE testimony was unacceptable; and (5) the ALJ did not fully and fairly review Plaintiff's testimony.

## DISCUSSION

A. <u>Treating Physician Opinion</u>

Plaintiff contends that the ALJ ignored Dr. Gillian's opinion that, after right carpal tunnel release, he could not use his hands repetitively and could only lift five pounds.

It is true that the medical opinion of a claimant's treating physician is entitled to "special weight."  *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985).  Reliance on the opinion of the treating physician is based not only on the fact that he is employed to cure but also on his greater opportunity to observe and know the patient as an individual.  However, a treating physician's opinion is not conclusive as to a physical condition or the ultimate issue of disability.  *Magallanes*, 881 F.2d at 751, and *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the rejection.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

---

[4] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

Here, the ALJ determined that Plaintiff retained the RFC to occasionally lift and carry 100 pounds, 50 pounds frequently. AR 49. The ALJ further found that Plaintiff needed to avoid repetitive use of his hands for grasping and forceful gripping. AR 49.

In reviewing the medical evidence, the ALJ set forth Dr. Gillian's opinion and Plaintiff's subsequent physical therapy. AR 46. The ALJ then correctly noted Dr. Gillian's May 23, 2001, opinion that Plaintiff's right hand was healing well and that he had full range of motion in the right hand, wrist and elbow. AR 46, 254. The ALJ agreed with the medical evidence that Plaintiff continued to have residual problems with grasping and gripping, but found that Plaintiff was not limited in his ability to lift and carry weight. AR 49.

In formulating the RFC, Plaintiff argues that the ALJ ignored Dr. Gillian's May 9, 2001, opinion that Plaintiff could not lift over five pounds and had to avoid repetitive and strenuous activities with both hands. AR 253. Of course, this opinion reflected Plaintiff's abilities *three weeks* after his April 19, 2001, surgery. AR 255. Subsequent to his surgery, Plaintiff underwent physical therapy in May and June 2001. When he was released on June 27, 2001, Plaintiff reported that he was independent in helping his son dress, tie his shoes, and fix his hair. AR 240. He could cook a light dinner and use a knife for short periods. He could carry a grocery sack weighing up to seven pounds. AR 240. Although only a slight improvement in the amount of weight he could carry, it demonstrates that Dr. Gillian's restrictions were only temporary and a direct result of Plaintiff's April 19, 2001 surgery. Indeed, on May 9, 2001, Dr. Gillian estimated Plaintiff's disability to last for six weeks. AR 253.

Residual functional capacity findings are not only based on a medical source statement from a physician; the assessment is based on all relevant evidence of record, such as clinical signs and laboratory findings, and a claimant's medical history, treatment and work history. SSR 96-8p. The ALJ noted Dr. Gillian's limitations but then correctly found that the evidence did not support a limitation in his ability to lift and carry weight.

B.  <u>Assisting Plaintiff</u>

Next, Plaintiff, who was unrepresented at the hearing, argues that the ALJ failed to assist him during the hearing and therefore failed to provide Plaintiff with due process. Specifically,

1  Plaintiff asserts that the ALJ failed to explain why Plaintiff "might consider or even need
2  representation," failed to assist Plaintiff in obtaining records and third party statements, and
3  failed to order a consultive examination.  In conjunction with this argument, Plaintiff contends
4  that, based on these omissions, ALJ Berry is biased against Plaintiff and other claimants.  In
5  addition to this "general bias," Plaintiff also suggests that ALJ Berry is biased against Ms. Fazio,
6  Plaintiff's counsel.

7       "Lack of counsel does not affect the validity of the hearing and hence warrant remand,
8  unless the claimant can demonstrate prejudice or unfairness in the administrative proceedings."
9  *Vidal v. Harris*, 637 F.2d 710, 714 (9th Cir.1981).  Thus, "the issue is not whether the right to
10 representation was knowingly waived, rather, it is whether, in the absence of representation, the
11 administrative law judge met the heavy burden imposed by *Cox*." *See id.*  In *Cox*, the Ninth
12 Circuit held that where a claimant is not represented by counsel, "it is incumbent upon the ALJ to
13 scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."
14 *See Cox v. Califano,* 587 F.2d 988, 991 (9th Cir.1978) (internal quotation omitted).  In such a
15 situation, the ALJ "must be especially diligent in ensuring that favorable as well as unfavorable
16 facts and circumstances are elicited." *See id.* (internal quotation omitted).

17      Here, prior to the start of each hearing, the ALJ ensured that Plaintiff knew of his right to
18 representation and that he wished to proceed without counsel.  AR 69, 85.  In a July 12, 2000,
19 letter to Plaintiff regarding the hearing process, ALJ Berry explained that Plaintiff had a right to
20 representation, and that a representative could "help you get evidence, prepare for the hearing,
21 and present your case at the hearing."  AR 121.  The publication, "Social Security and Your
22 Right to Representation" was included with the letter, along with a list of groups that could help
23 Plaintiff locate a representative.  AR 121.  Plaintiff's claim that the ALJ didn't explain the
24 benefits of an attorney to Plaintiff, even if such a duty exists, fails.

25      Insofar as Plaintiff contends that the ALJ failed to help Plaintiff obtain records and/or
26 further develop the record, his claim also fails.  Plaintiff claims that the ALJ failed to assist him
27 in obtaining records, third party statements, clarification of the treating source opinion, and/or
28 additional opinion evidence, including a consultive examination.  Plaintiff asserts that the ALJ

admitted to knowing that additional records existed regarding Plaintiff's hepatitis. As explained above, the ALJ has a heightened duty to develop the medical record where a claimant is unrepresented. However, there is no indication that the record was inadequate or ambiguous so as to trigger the ALJ's duty to develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001).

In fact, the record shows that the ALJ assisted Plaintiff numerous times. During the first hearing held on March 26, 2001, after Plaintiff informed the ALJ that he was having surgery on April 19, 2001, the ALJ indicated that he would hold the record open until May 15 so that Plaintiff could mail the ALJ the new evidence. AR 70. When Plaintiff informed the ALJ that he had hepatitis C, the ALJ told Plaintiff that there was nothing in the record about it and that Plaintiff needed to have those records sent to the ALJ. AR 80. The ALJ said, "it's important that you get those records to me," to which Plaintiff responded, "I will go right this minute when I get out of this office." AR 80. The ALJ warned Plaintiff that if he did not get the records, he would make a decision based on the evidence before him, and Plaintiff reassured the ALJ that the records would arrive that day. AR 81.

At the start of the second hearing, Plaintiff introduced the records from his 1979 accident. AR 86. Plaintiff also brought a copy of Dr. Cardova's October 12, 2001, report. AR 89.

Based on the repeated explanations by the ALJ about the importance of the evidence, and Plaintiff's apparent understanding of the importance of producing his records, Plaintiff's claim that the ALJ didn't explain the need for the records is simply untrue.

Plaintiff's claims of ALJ bias are also unsupported. Plaintiff makes widespread claims of bias against Plaintiff, all claimants, and Plaintiff's current attorney. Plaintiff supports his argument of bias with ALJ's Berry's statistics for approving claims- he states that ALJ Berry approves only about 10% to 20% of all claims before him, while the national average is about 65% and visiting judges at his office have approved about 80%. When faced with a claim of bias, the Court must start with the presumption that administrative adjudicators are unbiased and that they exercise their decision-making authority with honesty and integrity. *See Schneider v. McClure*, 456 U.S. 188, 195-196 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). This

presumption can be rebutted by a showing of a conflict of interest or by showing some other specific reason for disqualification. *Schneider*, 456 U.S. at 195. The burden of overcoming this presumption rests with the Plaintiff. *Id.* At 196. As Plaintiff has made only generalized claims of bias and has pointed to no specific evidence, Plaintiff has not carried this burden.

C.     <u>Step II Error</u>

Next, Plaintiff argues that the ALJ improperly evaluated the evidence and, as a result, failed to find any specific impairment severe and instead found only a "history" of severe impairments. Plaintiff also claims that the ALJ ignored Plaintiff's hepatitis C and failed to give specific reasons for finding his bilateral CTS, right ulnar nerve compromise, finger deformities, cervical arthritis and secondary nerve damage non-severe impairments.

Plaintiff bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512. A person is disabled if his impairments are severe and meet the durational requirement of twelve months. 20 C.F.R. §§ 404.1505, 404,1520(a). A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting. 20 C.F.R. § 404.1521(b).

First, Plaintiff's claim that the ALJ found a "history" of severe impairments, rather than severe impairments, is a distinction without a difference. In setting forth Plaintiff's impairments, the ALJ found that Plaintiff has "a history of carpal tunnel syndrome, history of hepatitis C, and tenosynovitis, impairments that are severe within the meaning of the Regulations. . ." AR 45. As Respondent points out, the text of the decision makes it clear that the ALJ considered these impairments, regardless of the terminology he used.

Second, Plaintiff argues that the ALJ ignored Plaintiff's hepatitis C. Plaintiff contends that his hepatitis C, and his Interferon treatments, preclude full time work. Again, however, a review of the ALJ's decision renders Plaintiff's argument meritless. The ALJ thoroughly

considered Plaintiff's hepatitis C and his Interferon injections. AR 48. He also evaluated Plaintiff's laboratory results relating to his hepatitis C. AR 48. The ALJ concluded that the objective evidence did not indicate that his hepatitis C was a disabling impairment. AR 48. Indeed, Plaintiff's final report of August 10, 2001, establishes that Plaintiff was "doing fine." AR Plaintiff received his last Interferon injection that day and his treatment ended. AR 176.

Finally, Plaintiff argues that the ALJ failed to give specific reasons for finding his bilateral CTS, right ulnar nerve compromise, finger deformities, cervical arthritis and secondary nerve damage non-severe impairments. An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at step II medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). SSR 85-28.

Contrary to Plaintiff's argument, the ALJ *did* find Plaintiff's carpal tunnel syndrome severe. AR 45. As for Plaintiff's right ulnar nerve compromise, the ALJ reasonably found that it was not a severe impairment. As the ALJ correctly noted, Plaintiff recovered from his 1979 elbow surgery and there is no indication in the record that any physician suggested treatment for his right ulnar nerve. AR 46, 48, 250-251.

As to Plaintiff's finger deformities, and cervical arthritis and secondary nerve damage, there is little or no evidence in the record to support a finding that these impairments resulted in any limitations.

D.  <u>Vocational Expert Testimony</u>

Plaintiff contends that the VE testimony was unacceptable because (1) the transferability of skills analysis was in error; and (2) there was a lack of discussion as to whether the cosmetologist job was past relevant work.

1.    *Transferability of Skills*

The VE determined that Plaintiff had the transferable skills of money-handling and knowledge of application of colors and solutions. AR 94. The VE explained that the "knowledge of colors and solutions and how they're used in the cosmetology field, they transfer to re-supply sales, for example, or beauty equipment sales." AR 94. In his decision, the ALJ concurred with the VE and found that Plaintiff had these transferrable skills. AR 50. Based on the VE testimony, the ALJ concluded that Plaintiff could work as a beauty supply or equipment sales person or light delivery driver. AR 51.

Plaintiff contends that there was no testimony from the VE that both transferrable skills actually transferred to the beauty supply or equipment sales person or light delivery driver jobs identified by the ALJ, making the ALJ's conclusion not fully supported. However, when the ALJ posed his hypothetical questions to the VE, which included an individual of Plaintiff's age, educational and employment background, and having Plaintiff's limitations, the VE opined that this person could perform the jobs of beauty supply sales and light delivery. AR 95. Therefore, contrary to Plaintiff's assertion, the VE took into account Plaintiff's transferable skills, as well as Plaintiff's age, and education and employment history, in determining that Plaintiff could perform work in beauty supply sales or as a light delivery driver. Moreover, as Respondent notes, given Plaintiff's age, education, and work experience, even if he could perform only unskilled work, he would not be found disabled under the Medical Vocational Guidelines. 20 C.F.R. §§ 404.1501, et seq., Appendix 2, Rules 202.00 - 204.00.

2.    *Past Relevant Work*

In a related argument, Plaintiff contends that there was a "lack of discussion of whether the cosmetologist job was PRW, as defined." Opening Brief, at 9. Plaintiff points out that he was unsure as to when he last performed the job, and the ALJ had "written down" that it was in 1987. Plaintiff contends that the ALJ's guess does not constitute good evidence, and Plaintiff may therefore not have the skills reported as potentially transferable.

At the beginning of the VE's testimony, she indicated that she did not know if the occupation of cosmetologist falls within the 15 years because the dates were unclear. AR 92.

15

The ALJ then asked Plaintiff when he last worked as a cosmetologist and Plaintiff responded, "[i]n 1985 or '86." AR 93. Plaintiff explained that he couldn't be sure because he was "very heavily on drugs" during that time. AR 93. The ALJ stated that he had the date written down as 1987, based on Plaintiff's testimony at the last hearing.[5] AR 93. The ALJ then stated, "Let's say it's '87." AR 93.

In determining past relevant work, the regulations explain, "We do not usually consider work that you did 15 years or more before the time we are deciding whether you are disabled applies." 20 C.F.R. § 416.965. Courts have recognized that this "fifteen-year cut-off is not a fixed rule of law, but rather a guideline, the application of which is governed by the facts and circumstances particular to each case." *Khuu v. Chater*, 12 F.Supp.2d 1028, 1031 (C.D.Cal.1997); *Smith v. Secretary of Health and Human Services*, 893 F.2d 106, 109 (6th Cir.1989).

Here, there was obvious confusion as to the last time Plaintiff worked as a cosmetologist, and Plaintiff admitted that the confusion was due to his heavy drug use during the time in question. Plaintiff filed his application in December 1999, making the 15 year window extend back to 1984. Therefore, based on any of the dates given, Petitioner performed the job of cosmetologist in the past 15 years. In any event, the 15 year cut-off is nothing more than a guideline, and there is nothing about the facts of this case that render the ALJ's decision to use 1987 questionable. Moreover, as noted previously, Plaintiff would have been found not disabled even if he could only do unskilled work.

E.   Plaintiff's Testimony

Finally, Plaintiff argues that the ALJ ignored much of Plaintiff's testimony and/or misstated portions. He contends that the ALJ failed to give adequate reasons for rejecting Plaintiff's testimony under SSR 96-7p.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS,* 933 F.2d 735 (9th Cir. 1991). In rejecting

---

[5] During the first hearing, Plaintiff testified that he last worked in 1987 as a hairdresser. AR 74. He then stated, "it was '86 or '87. I was under the influence of drugs then, Your Honor." AR 74.

the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)(quoting *Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988)).

"Despite the inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working." *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). It is possible to suffer disabling pain even where the degree of pain is unsupported by objective medical findings. *Id*. "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id*. (citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony. *Id*. at 602. However, an ALJ cannot be required to believe every allegation of disabling pain. "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain." *Id*. at 603.

Once a claimant produces medical evidence of an underlying impairment likely to cause the alleged pain, the ALJ may not discredit the allegations of the severity of the pain solely because the evidence does not support plaintiff's statements. *Lester*, 81 F.3d at 834 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991)(*en banc*)).

Prior to reviewing Plaintiff's testimony, the ALJ noted his duty to examine the testimony pursuant to SSR 96-7p. He then set forth Plaintiff's testimony and concluded that, "[o]verall, the nature, location, onset, duration, radiation, frequency and intensity of the claimant's alleged impairments do not appear to be corroborated by the record to the degree alleged." AR 47. The ALJ correctly noted that, "[a]lthough the claimant testified to severe, unremitting pain, the claimant stated he takes only Ultram, a non-steroidal anti-inflammatory medication, and he testified that this medication helped." AR 48. As for Plaintiff's hepatitis C, the ALJ determined that the objective reports did not show significant abnormalities, that Plaintiff was no longer taking medication, and that his final report indicated he was "doing fine." AR 48. These factors,

including objective support and helpful medications, were properly considered by the ALJ. Tidwell v. Apfel, 161 F.3d 599, 601-602 (9th Cir. 1998).

Next, the ALJ described Plaintiff's oral and written testimony about his "fairly wide range of daily activities." AR 48. Plaintiff "shops, takes care of his young son, works on cars, and does chores. He attends to his own personal needs." AR 48. Indeed, Plaintiff's testimony supports this finding. Plaintiff's daily activities can be properly considered in the ALJ's credibility determination. Tidwell, 161 F.3d at 601-602; SSR 96-7p.

The ALJ's determination was therefore supported by substantial evidence. In any event, where the evidence is susceptible of more than one rational interpretation and the Commissioner has provided a rational interpretation, it must be upheld. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Manuel Valenzuela.

IT IS SO ORDERED.

**Dated:   April 29, 2005**          /s/ Dennis L. Beck
3b142a                                UNITED STATES MAGISTRATE JUDGE